| | |
|---|---|
| 1 | NICK S. PUJJI (Bar No. 259571) |
| | nick.pujji@dentons.com |
| 2 | KAREN LUONG (Bar No. 246809) |
| | karen.luong@dentons.com |
| 3 | CAROL YUR (BAR NO. 290145) |
| | carol.yur@dentons.com |
| 4 | DENTONS US LLP |
| | 601 South Figueroa Street, Suite 2500 |
| 5 | Los Angeles, California  90017 |
| | Telephone:   (213) 623-9300 |
| 6 | Facsimile:    (213) 623-9924 |
| 7 | Attorneys for Defendants/Third-Party Plaintiffs |
| | BRENDA SUE GETTY and RICHARD A. |
| 8 | GETTY |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEHEMIAH KONG, | NO. 2-18-cv-09321-MWF-JDE |
| Plaintiff, | **DECLARATION OF DEFENDANT/THIRD-PARTY PLAINTIFF RICHARD A. GETTY IN SUPPORT OF NOTICE AND APPLICATION FOR DEFAULT JUDGMENT** |
| v. | |
| BRENDA SUE GETTY, an individual and representative capacity as trustee of the Richard J. Getty Living Trust Agreement; RICHARD A. GETTY, an individual and representative capacity as trustee of the Richard J. Getty Living Trust Agreement; and DOES 1-10, | Hearing Date:   June 22, 2020. |
| | Courtroom:        5A |
| | Hearing Time:   10:00 a.m. |
| | Judge:                Hon. Michael W. Fitzgerald |
| Defendants. | |
| BRENDA SUE GETTY, an individual and representative capacity as trustee of the Richard J. Getty Living Trust Agreement; RICHARD A. GETTY, an individual and representative capacity as trustee of the Richard J. Getty Living Trust Agreement, | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| Third-Party Plaintiffs, | |
| v. | |
| PAVE WEST INC., | |
| Third-Party Defendant. | |

1

# DECLARATION OF RICHARD A. GETTY

I, Richard A. Getty, declare as follows.

1. I am a Defendant and Third-Party Plaintiff in this action. I am over the age of 18 years and the facts stated herein are true of my own personal knowledge except those matters stated on information and belief, and as to those matters, I believe them to be true. If called as a witness, I could and would competently testify thereto.

2. At all relevant times, I was a trustee of the Richard J. Getty Living Trust, which holds property located at 1603 E. Los Angeles Avenue, Simi Valley, California 93065.

3. On or about February 27, 2018, I on behalf of the Richard J. Getty Living Trust and Pave West Inc. ("Pave West") entered into a written contract (the "One-Time Project Agreement") whereby Pave West agreed to remove and replace damaged asphalt, re-grade and compact existing sub-grade, pave-back removed asphalt, restripe the parking lot, and install speed bumps in compliance with all applicable federal, state and local laws and regulations. A true and correct copy of this contract is attached hereto as **Exhibit A**.

4. This agreement and understanding of the parties is reflected in the One-Time Project Agreement in Section 6(P):

> **Contractor represents and warrants that:**
> **(1) any goods or service furnished pursuant hereto shall be in compliance with all applicable federal, state and local laws and regulations . . . . Contractor at its sole cost and expense, shall defend and protect Owner and Agent against any and all suits, actions, and claims arising out of any charge of such non-compliance with**

      **any of the above requirements and shall fully indemnify and defend Owner and Agent from and against any and all loss, cost, expense, or damage which may arise out of any and every non-compliance by Contractor, its subcontractors and any others performing any Work by or through them, including without limitation an [sic] any of their agents and against any and all claims arising from or related to any breach of the foregoing representations and warranties.**

5. I deny that any party has engaged in any wrongdoing or is liable to Plaintiff Nehemiah Kong ("Kong") for any amount. However, to the extent that Defendant and Third-Party Plaintiff Brenda Sue Getty and I are held liable to Kong, it is only by reason of Pave West's negligent and wrongful performance of its obligations reflected in the One-Time Project Agreement. Thus, Brenda Sue Getty and I seek indemnification and/or reimbursement from Pave West in the amount of at least ███████, plus accruing interest, representing damages, expenses, and/or payments of any kind which Brenda Sue Getty and I are obligated to make or incur as a result of Pave West's negligent and wrongful performance of the One-Time Project Agreement.

6. Brenda Sue Getty and I are entitled to at least $110,120.00 in compensatory damages as this was the amount that we paid Pave West pursuant to the One-Time Project Agreement whereby Pave West agreed to remove and replace damaged asphalt, re-grade and compact existing sub-grade, pave-back removed asphalt, restripe the parking lot, and install speed bumps in compliance with all applicable federal, state and local laws and regulations.

7. I have performed all obligations required of me under the One-Time Project Agreement.

8. Brenda Sue Getty and I are entitled to an additional ███████████████████████████████████████████████

9. Brenda Sue Getty and I are also entitled to attorneys' fees and costs against Pave West on account of defending the Complaint and the claims pled in the Third-Party Complaint. Brenda Sue Getty and I intend to supplement the Motion to state the amount of attorneys' fees and costs incurred in this action once said fees and costs are finalized and well in advance of the hearing.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to my knowledge.

Executed on May 14th, 2020, in _Lexington_, Kentucky.

_____
Richard A. Getty

113123012

# EXHIBIT A



**NAI**Capital

MANAGEMENT, INC

## ONE-TIME PROJECT AGREEMENT

This One-Time Project Agreement (this "**Agreement**") is made on or about February 27, 2018, by and between the following parties: NAI Capital Management, Inc., ("**Agent**"), as agent for Owner and the Contractor identified below:

### INITIAL DEFINITIONS

| | |
|---|---|
| "Agent": | NAI Capital Management, Inc. |
| "Owner": | Richard J. Getty Living Trust |
| "Contractor" | PaveWest |
| License Number | 968049 |
| Contractor's Address: | 11170 166th St. Artesia, CA 90701 |
| Property located at: "Project" | 1603 E. Los Angeles Avenue, Simi Valley, CA 93065 |
| Billing Address for Owner: | Richard J Getty Living Trust<br>c/o NAI Capital Management, Inc.<br>P.O. Box 745<br>San Clemente, CA 92674 |
| Description of Work: | Remove and replace damaged asphalt. Restripe parking stall lines. |
| Cost of Work | One hundred ten thousand one hundred twenty dollars ($110,120.00). |

### RECITALS

Agent enters into this Agreement with Contractor, solely in its capacity as the agent for Owner of the Project, for the purpose of retaining Contractor to provide the Work described herein. Contractor acknowledges that Agent is acting solely as the agent for the Owner of the Project, is entering into this Agreement for the account and benefit of Owner and that all liabilities and obligations incurred under this Agreement are solely the liabilities and obligations of Owner and not Agent. Agent expressly disclaims all liabilities and obligations arising under this Agreement and Contractor hereby waives, releases and agrees not to assert any claims against Agent which are in any manner related to or arise out of this Agreement, and the Contractor's presence on or about the Project.

The Owner and Contractor agree as set forth below:

1. **THE CONTRACT DOCUMENTS**:  This Agreement, including the Recitals, the Initial Definitions appearing above, and the Exhibits attached hereto or identified in this Agreement (collectively the "**Contract Documents**"), contain all of the agreements, conditions and understandings of the parties and supersedes all prior negotiations, representations or agreements between them, whether oral or written. In the event of a conflict between the terms of this Agreement and any other document, including any Exhibits to which this Agreement may refer, the terms and conditions of this Agreement shall apply and control over any conflicting provisions contained in any Exhibits attached hereto or incorporated in this Agreement.

2. **SCOPE OF WORK INCLUDED**:  The scope of work set forth in **Exhibit #1** hereto is incorporated in this Agreement by reference. It is understood that this Agreement is for the total completion of all work outlined herein and reasonably inferable from this Agreement (the "**Work**"). The Contractor's Work shall include all materials and labor for the final completion of the Work. All Work shall be performed by Contractor in accordance with common and accepted standards of workmanship and must conform to applicable Federal, State, and County laws and local or municipal codes, specifications and guidelines. All inspections, approvals, licenses and permits for the Work shall be the responsibility of the Contractor. The Contractor, on demand, will furnish Agent with any and all certificates of compliance, permits and plans, including without limitation those required by any government and other private and public authorities.

{00121572}

6



3. **CONSIDERATION**:

(a)   The total consideration to be paid Contractor for all materials and labor for the Work as outlined in this Agreement is identified in **Exhibit #1** hereto, and is subject to any additions and changes as agreed upon, in advance, and only in writing. Any applicable sales tax is included in the total consideration. No additional compensation shall be due Contractor without a written change order or other written confirmation approving same. Payment to the Contractor shall be made: (i) within thirty (30) days after the submission of any invoices consistent with any payment schedule included within **Exhibit #1** and satisfaction of the requirements provided for below in Section 3(b); or (ii) if no payment schedule is included, payment shall be made within thirty (30) days after: (x) completion of the Work; (y) submission of invoices to Agent; and (z) satisfaction of the requirements provided for below in Section 3(b).

(b)   Invoices shall be submitted by Contractor to Agent no more than fifteen (15) days after completion of the Work for which Contractor seeks payment. No payment will be made on account of the Work completed until after inspection and acceptance of the Work and Contractor's submission to Agent of properly completed lien waivers (full or partial based on the Work completed), from Contractor, subcontractors, material suppliers and any others preforming any portion of the Work through Contractor. Contractor shall also provide a properly completed Contractor's Sworn Statement, identifying all subcontractors and others performing any portion of the Work through Contractor and all material suppliers. The Contractor's Sworn Statement shall include the amounts due each subcontractor and material supplier and be updated as the Work progresses and payments are made to Contractor. Satisfaction of the requirements of this Section 3(b) are a condition precedent to any payments being made to Contractor.

4.   **TIME OF COMMENCEMENT AND COMPLETION**:  The Work to be performed under this Agreement shall begin (not before): February 27, 2018 and shall be completed on or before March 13, 2018, subject to weather delays (the "**Completion Date**") unless earlier terminated (collectively, the foregoing shall be considered the "**Contract Period**"). Notwithstanding the foregoing, if the Work to be performed is not fully completed by the Completion Date, the Contract Period shall, at the election of Owner, Owner's Representative or Agent, continue on a month-to-month basis after the specified Completion Date and continue until such time as Contractor has fully completed the Work to Agent's reasonable satisfaction. In the event Contractor fails to fully complete the Work by the stated Completion Date, Contractor's Compensation shall be reduced by the amount 1.5% per day until the Work is completed to Agent's reasonable satisfaction, subject to delays resulting from Force Majeure. For purposes hereof, "**Force Majeure**" shall mean: events such as fire, flood, earthquake or similar natural disasters, riot, war, terrorism, civil strife, epidemics, border closings, quarantines or police action of civil or military authority, blackouts, strikes or sabotage, which are beyond the reasonable control of the party claiming to have been delayed.

All materials and workmanship shall be subject to inspection and acceptance by Agent, or Owner, or Owner's representatives. Upon request, Contractor shall furnish Agent with a list of the materials to be used and the suppliers from whom the materials for the Work mentioned in this Agreement have been purchased. Contractor shall take appropriate preventive steps that it reasonably believes will ensure that its employees and all subcontractors will not engage in inappropriate conduct while performing work under this Agreement. Agent in its discretion may require Contractor to remove any employee and others under its control, or under the control of any subcontractor, from the Project that is engaging in inappropriate conduct.

Notwithstanding anything contained in this Agreement to the contrary, Owner, Owner's representatives or Agent shall have the right to terminate this Agreement: (i) upon thirty (30) days' prior written notice to Contractor; (ii) immediately in the event the Project is sold; or (iii) immediately in the event Contractor breaches or otherwise fails to fulfill any of its obligations under this Agreement, including without limitation completing the Work by the stated Completion Date. Should this Agreement be terminated prior to Contractor's completion of the Work, Contractor shall be entitled to payment for the portion of the Work completed up to the date on which this Agreement is terminated, but shall not be entitled to recover any loss profit, overhead or general conditions with respect to the portion of the uncompleted Work.

5. **INSURANCE REQUIREMENTS**:

A.   Contractor, at its sole cost and expense, shall at all times during the term of the Agreement, carry and maintain the following insurance coverage, with insurance companies authorized to do business within the State of Illinois, with a minimum A.M. Best rating of A, VIII. Before commencing any Work or delivering any materials to the Project, Contractor shall furnish Agent and Owner with certificate(s) evidencing said insurance policy or policies and shall assume responsibility for placement and renewal of all such policies.

(1)   **Commercial general liability insurance**, on an occurrence form, adequate to protect the interest of the parties hereto, which shall name Owner, Owner's representatives and Agent as additional insureds on a CG 20 37 07 04 form including completed operations or its equivalent; shall waive all rights of subrogation in favor of Owner, Owner's representatives and Agent on a CG 24 04 10 93 form or its equivalent; and shall be written on a primary and non-contributory basis over any liability policy carried by Owner, Owner's representatives and Agent, and include an endorsement clarifying such position if the base policy does not include equivalent language, for all claims or liabilities arising from, or incidental to this Agreement. General liability risks and key exposures to be covered shall include, but not be limited to, the Project and Contractor's operations in connection with the Project, blanket contractual, personal injury, and completed operations. The limits of each policy shall not be less than **$1,000,000** per occurrence and **$2,000,000** aggregate for bodily injury, personal injury and property damage; Policy must delete all X, C, and U exclusions.

(2)   **Automobile liability insurance**, covering Contractor's ownership and operation of owned, hired (rented) and non-owned automobiles in an amount not less than **$1,000,000** combined single limit for bodily injury and property damage; which shall name

{00121572}

7

Owner, Owner's representatives and Agent as additional insureds; and shall be primary and not excess over any liability policy carried by Owner or Agent;

(3) **Workers' Compensation insurance**, in full compliance with all applicable state and federal laws and regulations covering all employees, agents and independent contractors of the Contractor. Coverage shall include employer's liability insurance in an amount of not less than **$1,000,000**. Such policy shall contain a waiver of subrogation in favor of Owner, Owner's representatives and Agent.

(4) **Umbrella liability insurance,** written on an occurrence form; providing coverage in an amount of not less than **$1,000,000** for all services, except **$5,000,000** for those services that can be defined as structural, mechanical, roofing, or remediation work. Such insurance shall be in excess of all liability coverage required herein; and shall name the Owner, Owner's representatives and Agent as additional insureds, and shall waive all rights of subrogation against Owner, Owner's representatives and Agent.

(5) **Personal property insurance**, which provides coverage for all loss or damage to any of Contractor's tools, equipment, materials (whether installed or not), for their full replacement cost and without reduction for depreciation, brought onto the Project. Such insurance shall waive all rights of subrogation against Owner, Owner's representatives and Agent.

(6) **Endorsements**. Contractor shall obtain and furnish to Agent and Owner Additional Insured and Waiver of Subrogation Endorsements.

(7) **Additional Insureds**. The following shall be named as additional insureds under Contractor's liability and property policies of insurance.

> Richard J. Getty Living Trust
> NAI Capital Management, Inc.

B. The policies of insurance required under this Agreement shall not be cancelled, non-renewed, reduced, or materially changed without 30 days' prior written notice, by certified mail return receipt requested, to Owner, Owner's representatives and Agent.

C. To the extent that Contractor employs, utilizes or contracts with subcontractors and/or independent contractors for some or all of the services to be provided hereunder and pursuant to this Agreement, Contractor shall require such subcontractors and/or independent contractors to comply with the same insurance requirements as set forth above in Section 5.A. The Contractor shall not allow any subcontractor to begin Work until the Contractor has obtained a certificate evidencing the required insurance and delivered a copy of such certificate to Agent. Contractor is responsible for all loss or damage arising out of or resulting from any subcontractor's failure to carry the insurance coverages required under this Agreement.

D. Contractor expressly, knowingly, and voluntarily waives and releases any claims that they may have against Owner, Owner's representatives and Agent as well as Owner, Owner's representatives and Agent's employees, directors, officers, agents, or representatives for damage to its property and loss of business income as a result of the acts or omissions of Owner, Owner's representatives and Agent as well as Owner, Owner's representatives and Agent's employees, directors, officers, agents, or representatives (specifically including the negligence and/or the intentional misconduct of either Owner, Owner's representatives and Agent or Owner, Owner's representatives and Agent's employees, directors, officers, agents, or representatives), to the extent any such claims are covered by the worker's compensation, employer's liability, property, rental income, business income, or any other property insurance that either party may carry at the time of an occurrence. Contractor shall, on or before the earlier of the commencement date of any Work, the execution of this Agreement, or the date on which Contractor first enters upon the Project for any purpose, obtain and keep in full force and effect at all times thereafter a waiver of subrogation from its insurer concerning the workers' compensation, employer's liability, property, and other insurance maintained by it and the property located at the Project. This section shall control over any other provisions of this Agreement in conflict with it and shall survive the expiration or sooner termination of this Agreement.

E. Payment of any deductibles or self-insured retentions selected by Contractor in connection with its insurance, as required under this Agreement, shall be the sole responsibility of Contractor and in any event such deductibles or self-insured retention shall not exceed Ten Thousand Dollars ($10,000).

F. Owner may at its option purchase Builder's Risk Insurance for the benefit of Contractor and/or Contractor's subcontractors, if any, or Agent may request Contractor to procure such Builder's Risk Insurance (at Owner's cost) providing protection for Agent, Owner, Contractor and subcontractors.

6. **MISCELLANEOUS PROVISIONS:**

In addition to the foregoing provisions, the Owner and Contractor also agree as follows:

A. The Contractor agrees to and does hereby accept full and exclusive liability for compliance with all applicable laws and regulations related to workers compensation, social security, unemployment insurance, hours of labor, wages, working conditions and other employer-employee related issues, whether raised by federal, state or local law or regulation. The payment of any and all withholding and/or other taxes, imposed by governmental authority, contributions or taxes for unemployment insurance and/or retirement benefit, pensions or annuities, now or hereafter imposed by the government of the United States, and/or by the government of any state or territory of the United States, which are measured by the wages, salaries or other remuneration's paid to persons employed by the Contractor on

{00121572}

8



Work performed under the terms of this Agreement. Contractor agrees to be solely responsible for abiding with occupational safety and health regulations, and any violations shall be at Contractor's liability and expense.

      B. The Contractor will take necessary precautions to properly protect the Work included as well as the finished Work of other trades and will keep the building and/or premises clean at all times of debris arising out of the operation of the Agreement.

      C. If the Contractor deems that surfaces or Work, to which its Work is to be applied or affixed is unsatisfactory or unsuitable, written notification of said condition shall be given to the Agent prior to commencement of the Work, otherwise no consideration will be given to claims for extra compensation or non-responsibility in connection therewith.

      D. The Contractor will unconditionally warrant all Work performed pursuant to this Agreement, inclusive of labor and materials, for a period of one (1) year from the date in which Agent approves and accepts the Work. The Contractor will provide prompt service and/or repairs, including all material and labor during the warranty period at no additional cost to the Owner as necessary to correct, repair or replace any defective materials or workmanship.

      E. It is agreed that if the Contractor should neglect to prosecute the Work diligently and properly or fail to perform any provision of this Agreement, the Owner, after three (3) days written notice to the Contractor by personal delivery or by certified mail, return receipt requested, may correct any deficiency. The deposit of the notice in the U.S. Mail, postage prepaid, as herein provided shall be deemed delivery of notice.

      F. In the event of legal action being brought against Contractor for any breach of this agreement by Contractor, Owner shall be entitled to recover its actual attorney fees and costs in addition to any amount awarded by the Court.

      G. To the fullest extent permitted by law, Contractor hereby agrees to and shall waive any right of contribution and, with respect to the Owner and Agent, any limitation of liability under Worker Compensation laws, and shall indemnify, defend and hold harmless the Owner, Agent, Owner's affiliated entities and their representatives, agents, members, managers, trustees, officers, employees and consultants (individually an "**Indemnified Party**" or if plural the "**Indemnified Parties**") from and against all claims, damages, losses (including without limitation bodily injury, death and property damage) and expenses (collectively "**Claims**") including, but not limited to, attorneys' fees and economic and consequential damages arising out of, resulting from, or in connection with the performance of the Work, any act or omission of the Contractor, its subcontractors or those employed or working through them, while engaged in the performance of any Work, or while in, on, or about the Project or arising from liens or claims for services rendered or labor or materials furnished in or for the performance of the Work, provided that any such Claim is caused in whole or in part by any negligent act or omission of Contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity or contribution that would otherwise exist as to any party or person described in this Agreement.

      All Claims against any Indemnified Party by any employee of the Contractor or any of its subcontractors, and anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this Paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any subcontractor under worker compensation acts, disability benefit acts or other employee benefits acts.

      The indemnification provided for in this Section G shall also be construed to include, but not be limited to, the following: (1) injury or damage due to the failure of, or use, or misuse by Contractor, its subcontractors, agents, servants or employees, of items of equipment, whether or not the same be owned, furnished or loaned by Owner or Contractor; (2) all attorneys' fees and costs incurred in bringing an action to enforce the provisions of this indemnity provision or any other indemnity provision contained in the Contract Documents; and (3) the amount of time expended by the Indemnified Party and its employees, at their usual rates plus costs of travel, long distance telephone and reproduction of documents in connection with addressing and defending against any Claims and/or the enforcement of this indemnity provision or any other indemnity provision contained in the Contract Documents.

      Only to the extent necessary to prevent this provision from being void under 740 ILCS 35/1, *et seq.*, entitled "Indemnification of person from person's own negligence", this indemnity agreement shall not require the Contractor to indemnify any Indemnified Parties against that party's own negligence."

      H. This Agreement contains all of the agreements, conditions and understandings of the parties and supersedes all prior negotiations, representations or agreements between them, whether oral or written. In the event of a conflict between the terms of this Agreement and any other document, including any Exhibits to which this Agreement may refer, the terms and conditions of this Agreement shall apply. In the event any proposal or Scope of Work from Contractor which is incorporated into this Agreement contains any terms or conditions of Contractor or which supplement or modify the terms of this Agreement, such terms and conditions shall be void and not be considered as part of this Agreement.

      I. This Agreement may be executed in counterparts and, when all counterpart documents are executed, the counterparts will constitute a single binding instrument. Signatures in the form of facsimile, portable document format ("PDF") and any other electronic form shall be acceptable as originals for all purposes. The parties hereby intend that any signature executed electronically be deemed an "electronic signature" under applicable Federal and State law.

      J. Contractor represents and warrants that, during the term of this Agreement: (a) Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin; (b) Contractor will take affirmative action to

{00121572}



9

ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin; and (c) Contractor will fully adhere to all the requirements of Executive Order No. 11246; Section 5.03 of The Rehabilitation Act of 1973; and The Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended; and all other relevant state and federal laws. Contractor agrees to include the provisions of this section in any subcontract entered into in connection with the Work to be performed hereunder.

  K. Any assignment or attempt to assign any portion of its rights or obligations by Contractor, including the right to receive money that may become due Contractor under this Agreement, shall be void and of no force and effect unless Contractor shall have obtained the prior written consent to such assignment from Agent which consent may be withheld in Agent's sole discretion. Additionally, should any portion of this Agreement be assigned to a subcontractor, evidence of insurance must be provided in addition to written consent by Agent.

  L. Notices under this Agreement shall be in writing, addressed to Agent or Contractor to the addresses listed above and deemed properly given: (a) if hand delivered, on the day so delivered; (b) if sent by certified mail, postage repaid, return receipt requested, three (3) business days after being placed in the U.S Mail; or (c) if by any reputable nationally recognized express courier service, on the next business day after delivery to such express courier.

  M. This Agreement may be modified only by written amendment or other form of modification executed by authorized representatives of the parties hereto. It may not be modified by any oral agreements, by any implied agreement or custom, or by any waiver of any of its terms unless in writing.

  N. This Agreement and each provision of it shall operate to the benefit of the parties and to their respective successors in interest, legal representatives and assigns.

  O. This Agreement shall be construed, governed and enforced in accordance with the laws of the jurisdiction in which the Project is located.

  P. Contractor represents and warrants that: (i) any goods or services furnished pursuant hereto shall be in compliance with all applicable federal, state and local laws and regulations, including, without limitation, all environmental laws and regulations relating to or imposing liability or standards concerning or in connection with hazardous, toxic or dangerous wastes, substances, material, gas or particulate matter now or at any time hereafter in effect; (ii) it is not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by any Executive Order of the United States Treasury Department as a terrorist, "Specially Designated National or Blocked Person," or other banned or blocked person, entity, nation, or transaction pursuant to any law, order, rule, or regulation that is enforced or administered by the Office of Foreign Assets Control; and (iii) it is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity, or nation. Contractor at its sole cost and expense, shall defend and protect Owner and Agent against any and all suits, actions, and claims arising out of any charge of such non-compliance with any of the above requirements and shall fully indemnify and defend Owner and Agent from and against any and all loss, cost, expense, or damage which may arise out of any and every non-compliance by Contractor, its subcontractors and any others performing any Work by or through them, including without limitation an any of their agents and against any and all claims arising from or related to any breach of the foregoing representations and warranties.

[signatures appear on the following page]

{00121572}



IN WITNESS WHEREOF, the parties hereto have executed this One-Time Project Agreement on the day and year first written above.

| Owner Name: Richard J. Getty Living Trust<br>By: Richard A. Getty, on behalf of Richard J. Getty Living Trust | Contractor Name: Pave West Inc.<br>By: Tim Chao |
|---|---|
| By: _[signature]_, Trustee | Name: Tim Chao |
| Name: Richard A. Getty | Title: Project Manager / Sales Estimator |
| Title: Owner | Federal ID Number: 45-2543238 |

{00121572}



11

<2:18>
</2:18>

**EXHIBIT #1**

**SCOPE OF WORK OR PROPOSAL**

1. Sawcut and Remove and replace approximately 47,452 sq. ft. of damaged asphalt and remove it offsite.

2. Re-grade and compact existing sub-grade.

3. Pave back approximately 47,452 sq. ft. with 3 " of hot mix asphalt and roll and compact to a smooth finish.

4. Re-stripe exsting layout (10) T stalls (76) double line stalls (3) handicaps with cross hatches and repin all wheel stops. Install (3) new handicap signs and post and install (2) ADA entrance signs.

5. Install (3) Speed bumps along the back road per existing location.

TOTAL: $  110,120.00

* The job is bid for (2) moves.

* We can replace any broken wheel stops for 35.00 each

{00121572}



12